**Jean B. JONES**

v.

**Johnny JONES, Warden.**

**Civil Action No. 96–2448.**

United States District Court,
E.D. Louisiana.

Dec. 19, 1997.

---

John Harvey Craft, Virginia Laughlin Schlueter, Federal Public Defender, New Orleans, LA, for Plaintiff.

Karen Godail Arena, District Attorney's Office, Orleans Parish, New Orleans, LA, for Defendants.

### ORDER AND REASONS

BERRIGAN, District Judge.

The matter is before the Court on a petition for writ of habeas corpus by a prisoner in state custody under 28 U.S.C. § 2254. After receiving a Report and Recommendation from the Magistrate Judge and objections from the petitioner, JEAN JONES ("Jones"), the Court held an evidentiary hearing on October 3, 1997, and took the matter under submission. Having reviewed the pleadings, the state court record, the facts and the law, and having conducted an evidentiary hearing, the Court concludes that JONES' petition should be GRANTED.

### PROCEDURAL HISTORY

JONES alleges she received ineffective assistance of counsel at her state trial. JONES was indicted for distribution of heroin in violation of La.Rev.Stat. 40:966. The offense carries a mandatory life sentence in prison. Pretrial motions were heard, including motions to suppress. After several continuances for various reasons, the case was tried on September 12, 1988.

At trial, a New Orleans Police Department undercover narcotics officer testified that he met JONES at the corner of Broad and Washington Streets in New Orleans on September 4, 1987, and bought a bundle of heroin [1] from her for $350 in previously marked bills. He, and another officer at the scene, testified that the deal had been prearranged. JONES was immediately arrested after the sale. She was searched and the money was retrieved along with additional drugs. The parties stipulated that roughly half of the drugs seized overall tested as heroin.

The trial was brief. The minutes indicate that the jury venire was summoned at 9:25 a.m. for voir dire examination. At 11:58 a.m., the jury returned a verdict of guilty as charged, after eight minutes of deliberation. The entire trial, including pretrial jury selection and post-trial jury deliberations, lasted only about two and a half hours.

*LEGAL STANDARDS*

An accused's Sixth Amendment right to the assistance of counsel is one of the most fundamental components of our criminal justice system. Through legal representation, the defendant's other pretrial and trial rights are secured. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

■ The right to counsel means the right to the *effective assistance* of counsel. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

... the adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate." (Citation omitted). The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated. As Judge Wyzanski has written: "While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators." (Citation omitted).

*Cronic*, 466 U.S. at 656–657, 104 S.Ct. at 2045–46.

■ Pretrial investigation is essential to the effective assistance of counsel. A lawyer must engaged in a reasonable amount of pretrial investigation and "at a minimum ... interview potential witnesses and ... make an independent investigation of the facts and circumstances of the case." *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir.1985).

... strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *Strickland v. Washington*, 466 U.S. 668, 690–691, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674 (1984). The necessity for investigation increases with the "seriousness of the offense and the gravity of the punishment." *Bryant v. Scott*, 28 F.3d 1411, 1417 (5th Cir.1994).

■ Ineffectiveness of counsel is clear if the attorney fails to investigate a plausible line of defense or interview available witnesses. These can hardly be considered strategic choices since counsel by his failure has not obtained the facts upon which such a tactical decision could be reasonably made. *Nealy*, 764 F.2d at 1178; *Bryant, supra; Profitt v. Waldron*, 831 F.2d 1245 (5th Cir. 1987); *United States v. Gray*, 878 F.2d 702 (3rd Cir.1989).

---

**1.** A "bundle" was described by one officer as 30 "hits" or "shots in the arm" of heroin. Tr. 8–9.

On the same day in May 1984, the United States Supreme Court rendered two significant decisions regarding claims of ineffective assistance of counsel. *Cronic, supra; Strickland, supra.* In *Cronic,* the Court held that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Cronic,* 466 U.S. at 659, 104 S.Ct. at 2046. No specific showing of prejudice is necessary. On the other hand, if counsel made errors but not so serious as to deny the right to counsel altogether, then the reviewing court must determine if prejudice to the defendant resulted. *Strickland.* Under *Strickland,* prejudice is established if the defendant shows that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Assessments of prejudice are necessarily fact-intensive, tied to the peculiar circumstances of each individual case. *Nealy,* 764 F.2d at 1179.

*ANALYSIS*

■ The first question to determine here is whether counsel's representation was so inadequate that it "entirely failed to subject the prosecution's case to meaningful adversarial testing," thus constituting a denial of JONES' Sixth Amendment rights without the necessity of finding specific prejudice. *Cronic,* 466 U.S. at 659, 104 S.Ct. at 2046. To this question, the answer is "yes."

In addition, the actions and inactions of counsel in this case were such that a "reasonable probability" exists that "but for coun-

sel's unprofessional errors, the result of the proceedings would have been different." *Strickland,* 466 U.S at 694, 104 S.Ct. at 2068. Thus, under both the *Cronic* and *Strickland* criteria, JONES was denied the effective assistance of counsel.

**(a) The Defense at Trial**

The evidence in this case against JONES was strong, necessarily limiting the available defenses. But instead of exploring what possible defenses existed, trial counsel appeared to have abandoned the case early on. At trial, he presented a lackluster and to some extent incoherent theory of defense which he had not adequately investigated and which was contradicted by the evidence he had to know existed. He failed to meaningfully consult with his client, called her to testify without any preparation, and then in closing argument gave the case away to the prosecution.

■ The defense presented at trial appeared to be that JONES was high on drugs and *thought* what she was distributing was bunk, and not heroin [2]. Assuming this could have been a valid legal defense to a distribution of heroin charge,[3] it was so poorly investigated and presented as to be no defense at all.

Counsel began by waiving his opening statement depriving the jury of an explanation as to what the defense would be.[4] He then stipulated that at least some of the packets allegedly sold by JONES to the undercover agent were in fact heroin and not bunk.

The first witness was Officer Donald Polk who participated in the undercover sale. On cross-examination, counsel asked Polk if

---

**2.** It is not entirely clear from the trial transcript what the specific defense was and the Court is relying in part on counsel's testimony at the evidentiary hearing to articulate it.

**3.** Distribution of heroin is a general intent crime and such intent is established by mere proof of voluntary distribution. *State v. Frederick,* 340 So.2d 1353 (La.1976). Voluntary intoxication is a defense only in situations where it precludes a *specific* criminal intent or a special knowledge required in a particular crime. La.Rev.Stat. 14:15. Counsel appeared to concede the ques-

tionable legal validity of the defense when he stated at the evidentiary hearing that it was a "sympathy" defense. (Tr.Evid.Hrg. p. 35).

**4.** Considering the importance of first impressions, waiving the opening statement was another example of ineffectiveness. Counsel was fully aware of the specifics and strength of the state's case from the pretrial proceedings, so there was no justifiable strategic reason to waive the opening statement.

JONES appeared high on drugs at the time of the sale, to which Polk answered no.[5] Counsel then changed his tack and appeared to float out an entrapment theory, implying that Polk had initiated the sale. Officer Polk squelched that theory, stating in no uncertain terms that this was a prearranged drug sale, JONES knew exactly what was going on, she came for that purpose and when she got in the car, "we got straight down to business." (Tr. Trial p. 15). Despite Polk's emphatic rejection of counsel's implication, counsel returned to it later, by asking "And you're quite sure ... you didn't sort of initiate the sale, saying, hey, can you get something for me? No pushing her on to get the stuff," to which officer Polk again answered no, and reiterated that it was a pre-arranged sale.[6] (Tr. Trial p. 17).

Officer Clarence Wethern testified next. He was a witness to the drug sale and participated in the arrest. He had testified previously at a hearing on a motion to suppress a statement made by JONES after her arrest. The statement was ruled admissible. Officer Wethern testified at trial, as presumably he did at the pretrial hearing, that JONES told the officers after her arrest that some of the packets were bunk but that some of them were heroin. Since that same information was disclosed at the pretrial hearing, counsel knew before trial that JONES' own statement revealed she was aware she was distributing heroin, and not just bunk. On cross-examination, counsel asked Wethern if JONES appeared to be under the influence of drugs, to which he indicated no. (Tr. Trial p. 33). Since Wethern had testified at the pretrial suppression hearing, counsel should have known his answer would be no and it undermined his theory of defense to elicit the answer again at trial.[7]

After Wethern's testimony, the state rested and counsel called JONES to the stand. JONES contradicted both the state's case and counsel's alleged theory of defense.

On direct examination, she denied selling Polk anything and denied receiving any money from him. When her counsel asked her if she thought she was selling bunk, she stated, "I didn't sell him anything." (Tr. Trial p. 38). She did acknowledge being on drugs that day, but when counsel asked if her memory of that evening was therefore poor, she said no, that she recalled everything that happened. She claimed most of the packets which were seized were in fact antibiotics for her own health problems, even though counsel had already stipulated that some of those packets were in fact heroin.

Counsel called no other witness' on JONES' behalf.[8]

In closing arguments, counsel surrendered the case. The United States Supreme Court has recognized the significance of closing argument, finding that "no aspect" of legal advocacy "more important than the opportunity finally to marshall the evidence for each side before submission of the case to judgment." *Herring v. New York,* 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975).

Counsel in this case began his closing argument by describing the case as "very short

---

5. Officer Polk did not testify at any of the pretrial hearings so presumably counsel did not know what his answer would be. Other officers at the scene did however testify at those hearings and presumably counsel asked them that question. Unfortunately, a transcript is not available of those hearings. Nevertheless, regardless of what occurred at the pretrial hearings, counsel was apparently remiss. If he failed to ask the question of the officers at the hearing, that was an error of omission. If he asked the question and got a "no," then it was error to press the same question on Officer Polk at trial. If he asked the question at the hearing and got a "yes," then he was ineffective in failing to elicit that exculpatory answer at trial since both officers who testified at the hearings did in fact testify at trial for the prosecution.

6. Entrapment was an available defense, as will be discussed later, but not entrapment by Officer Polk. The viable entrapment defense hinged upon the activity of the confidential informant who was an agent of the police and' who solicited JONES to commit the offense. Counsel completely failed to investigate this defense.

7. See footnote 5.

8. The state called one more witness in rebuttal; another officer who observed the drug transaction and subsequently searched JONES and retrieved the marked money from the sale.

... concise, not too difficult to put together." (Tr. Closing Argu. p. 2). He then made the following remarks:

> Officer Polk, he's doing his duty; he's doing his job.

> I have no witnesses to bring forward on behalf of this woman. She put herself on the witness stand, and you saw her on the stand, you heard her testimony. (Tr. Closing Argu. p. 2).

He then described JONES as a heroin addict of 18 years duration, who was presumably high the evening of the sale.

> And then they book her, they book her with—I don't know what they booked her with; maybe distributing, which on the fact of this situation is a beautiful case. My God, you. couldn't have a better case than this. Three of five officers watching this go down; her with the money, the heroin. Locked, locked. This is a locked case. (Tr. Closing Argu. p. 4).

After discussing a delay between her arrest and formal indictment, counsel then reiterated:

> Now, I've got a mountain to get over, 'cause I've got three officers who testified that they saw a transaction go down, Like a woman who's an addict doesn't know what end is up, realistically. No, like I said entering this thing, the State's shooting for a locked case; they're looking for life. (Tr. Closing Argu. p. 5).

Counsel stated that JONES was either "nuttier than a fruitcake or loaded" to be walking around the projects with drugs on her. (Tr. Closing Argu. p. 6). He concluded that the jury would have to decide "if she had knowledge at the time whether she was bunking them or putting heroin on them" and repeated that "(i)f she knew what she was putting down, she got to be nuts or high on that night." (Tr. Closing Argu. p. 8).

Notable also is what counsel failed to argue. Distribution of heroin carries a mandatory life sentence. The lesser verdicts, besides not guilty, were guilty of attempted distribution of heroin, carrying ten to fifty years imprisonment; guilty of possession of heroin, carrying four to ten years imprisonment; and guilty of attempted possession of heroin, carrying a maximum of five years imprisonment. Needless to say, all of these responsive verdicts were significantly more advantageous to JONES than guilty as charged. But counsel's only mention of the responsive verdicts was in passing; he even advised that "the judge will go into that aspect," abdicating his role as an advocate. (Tr. Closing Argu. p. 5, p. 7). He did not even say what the responsive verdicts were much less argue why any of them were applicable.

Equally remiss was counsel's failure to emphasize the mandatory life sentence upon a conviction as charged. Louisiana law obliges the court to advise juries of a mandatory penalty such as this, if requested to do so by counsel. *State v. Washington*, 367 So.2d 4 (La.1978). The Louisiana Supreme Court came to this conclusion because it recognized that to jurors the seriousness of the penalty may be more indicative of the measure of criminal conduct than the actual distinction between elements of various possible verdicts. *State v. Prater*, 337 So.2d 1107, 1110 (La.1976), cited favorably in *Washington*, 367 So.2d at 4–5; see also *State v. Peddy*, 569 So.2d 1035 (La.App. 3rd Cir. 1990).

Only three months before trial in this case, an earlier trial setting for JONES had to be continued because the trial court was unable to seat a jury. Thirty-nine of the forty-five prospective jurors were excused for cause; the minute entry indicates that the prospective jurors were "unwilling to impose the consequences of a guilty as charged verdict," namely the mandatory life sentence.[9] Trial counsel was of course present at that earlier aborted trial setting.

Incredibly, counsel ignored this obvious and legally justified argument for a lesser verdict. In closing argument, counsel only mentioned the mandatory penalty once in passing and did not argue that what JONES had in fact done did not warrant a life sentence in prison. If, indeed, defense counsel

9. Minutes, June 13, 1988.

was seeking a "sympathy" verdict, the effect of this omission is only amplified.

Considering all the above, this Court concludes that counsel "entirely fail(ed) to subject the prosecutions case to meaningful adversarial testing" and denied JONES her Sixth Amendment right to counsel. *Cronic*, 466 U.S. at 659, 104 S.Ct. at 2046.

The result of the trial is understandable considering the inadequate pretrial preparation. Defense counsel's fatalism with his perceived prospects was evidenced early on. When asked at the evidentiary hearing if he requested assistance from the investigators at the Indigent Defender Board in connection with this case, he responded, "Didn't need it. You had three policeman, she was arrested at the scene. What would they investigate?" (Tr.Evid.Hrg. p. 36). Counsel stated his defense was that JONES was an addict and she thought what she was selling sugar or bunk. When asked if made any effort to contact any witnesses to bolster the defense that she was an addict, he responded "I can't get information if it does not come forward." (Tr.Evid.Hrg. p. 35). When asked specifically if he didn't feel that the mandatory life sentence "justified calling in an investigative staff to support your defense," he responded, "I have no idea." (Tr. Evid.Hrg. p. 36).[10]

While counsel complained at the evidentiary hearing that information didn't "come forward," it was his role as advocate to ask the pertinent questions and elicit information, rather than passively wait for it to be volunteered.

Counsel did not even meaningfully consult with his own client. "Counsel's actions are unusually based, quite properly ... on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2066. "Effective counsel includes familiarity of counsel with the case and an opportunity to investigate it if necessary in order meaningfully to advise the accused of his options." *Windom v. Cook*, 423 F.2d 721 at 721 (5th Cir.1970), quoting from *Calloway v. Powell*, 393 F.2d 886, 888 (5th Cir.1968).

JONES testified that counsel never met with her privately before trial, nor was she interviewed by any investigators from the public defender's office. The only time she spoke with counsel was in the courtroom in connection with pretrial proceedings. (Tr. Evid.Hrg. pp. 3–5). Even then, she said, counsel didn't discuss the case with her and when she tried to speak, "he wouldn't listen." She said counsel kept telling her "the DA had a lock case on me." (Tr.Evid.Hrg. p. 5, p. 12, p. 13).

Counsel acknowledged that he only spoke to JONES at the occasional courtroom proceedings and he did not even attempt to visit her in jail. (Tr.Evid.Hrg. pp. 29–30). While counsel claims to have discussed her case with her, the Court finds JONES version of those "discussions" as accurate.[11]

Counsel's lack of consultation with his client was most evident when she took the stand to testify. As previously noted, her testimony contradicted not only the state's case, but the defense theory as well.

**10.** *Bryant v. Scott*, 28 F.3d at 1417–1418 ("Bryant is serving a sentence of life imprisonment for his participation in the robbery, and given the seriousness of the offense and the gravity of the punishment, counsel should have tried to investigate the potential alibi witnesses.")

**11.** The Court paid close attention to both JONES and her trial counsel when they testified, assessing their demeanor as well as their words to evaluate credibility. The Court found JONES to be sincere and credible. Furthermore, since this conviction has totally impacted her life, her memory is understandably intact on many of the details. On the other hand, the Court found trial counsel to be defensive, evasive, at times disdainful of JONES and his clients in general. At one point, counsel referred to his clients as "these people" with a tone of contempt. (Tr.Evid.Hrg. p. 28). He lacked credibility in his selective recall of details of this representation. This case was tried over ten years ago, one of hundreds purportedly handled by this lawyer. For this reason, in combination with counsel's overall demeanor and tone, this Court placed little weight in the accuracy of his version of events when it conflicted with that of JONES. At the evidentiary hearing, counsel stated that he did not review the record of the case, nor his case file, nor any notes, nor any other material. As with the trial, he "winged it" at the evidentiary hearing.

JONES stated that her lawyer did not discuss her testimony with her in advance and simply told her it would be best if she testified. She also said that he did not advise her of her right *not* to testify. (Tr.Evid.Hrg. pp. 5–6). Trial counsel claimed several times that he instructs all his clients that it's their prerogative whether they testify or not, warning them only that if they do, any criminal conviction may be disclosed. He emphasized that it is their decision to make. (Tr. Evid.Hrg. p. 27, p. 28). Assuming that is his procedure, it is questionable whether he is providing effective assistance since defendants need the advice of counsel in deciding whether or not to testify. In any event, in this case, the Court has already credited JONES' testimony as to her discussions with counsel and found that counsel did not properly prepare JONES to testify.

#### (b) *Entrapment Defense*

■ The evidentiary hearing disclosed that a viable entrapment defense was available, literally at counsel's side, through his client's version of the events leading up to the sale. Under Louisiana law, entrapment is an affirmative defense. *State v. Brand,* 520 So.2d 114 (La.1988). An affirmative defense is one which does *not* negate any essential element of the offense but rather provides exculpation despite the fact that the prosecutor has proved all the elements beyond a reasonable doubt. *Brand,* 520 So.2d at 117, fn. 5.

Thus, the fact that the evidence was clear that JONES did in fact distribute heroin as charged, not only did that not negate entrapment as a defense but made it even more compelling as the only *viable* defense.

> ... an entrapment is perpetrated when a law enforcement official or a person acting in cooperation with such an official, for the purpose of obtaining evidence of the commission of an offense, solicits, encourages, or otherwise induces another person to engage in conduct constituting such offense when he is not then otherwise disposed to do so.

*State v. Batiste,* 363 So.2d 639, 641 (La.1978).

■ The question of whether a defendant has been so entrapped is a question of fact for the jury to decide. *State v. Harrington,* 332 So.2d 764 (La.1976). Significantly, the defense must prove entrapment only by a preponderance of the evidence. *Brand, supra.* This is obviously an easier burden to meet than the prosecution's obligation to negate entrapment by proof beyond a reasonable doubt.

The following evidence was readily available to counsel to support an entrapment defense:

■ 1. *The sale was solicited by a person acting in cooperation with the police.* According to the police report[12], on the day of the offense, the officers involved were approached by an informant who told them of heroin dealing in the Calliope housing project and offered to set up an undercover narcotics buy. The officers agreed and secured the funds to be used for the purchase. The informant then made the contact with JONES.

2. *The informant was "untested."* According to the report, the informant was "untested," meaning there had been no prior relationship between the informant and the officers. The informant is the one who contacted JONES and arranged for her to meet the officers at South Broad and Washington with the heroin. Since the informant was "untested," the officers could not have vouched in any manner at trial for his reliability or credibility nor the accuracy of his information.

3. *JONES' testimony.* According to JONES' testimony at the evidentiary hearing, which this Court found to be credible, on the day of the offense, the informant, who was also a fellow drug user, approached JONES at a street corner and asked if she could obtain two bundles of heroin for him. (Tr.Evid.Hrg. pp. 18–19). He gave her vari-

---

12. Such reports were available to the defense through discovery. *State v. McEwen,* 504 So.2d 817 (La.1987); *State v. Shropshire,* 471 So.2d 707 (La.1985). The Court assumes counsel exercised his right to obtain this report. If not, his failure to do so is another example of deficient performance.

ous pills at the time of the first conversation. (Tr.Evid.Hrg. p. 24). She told him she didn't have any and that she didn't know anyone who did. The informant contacted her several more times that day through a phone at a bar. In one conversation the informant told her he needed the bundles that day. (Tr. Evid.Hrg. p. 19; p. 22). The informant promised JONES ten bags of heroin and $50 a bundle if she could find a source. JONES was a heroin addict at the time and had no job nor any other source of income. (Tr. Evid.Hrg. pp. 22–23). After being promised both drugs and money, JONES asked around the neighborhood for a source and was told that "Lionel" had some drugs and he agreed to the sale. The informant called again and she told him about Lionel. He told her to bring Lionel to the location for the exchange. (Tr.Evid.Hrg. p. 20). According to both JONES and the police report, the confidential informant was present at the scene of the sale and spoke to JONES prior to the transaction going down. The police report likewise includes JONES' statement after her arrest that she obtained the drugs from "Lionel." This statement was also the focus of the motion to suppress hearing.

The above evidence supports an entrapment defense in that: (1) the informant was acting as an agent of the police; (2) the informant was the protagonist, pursuing JONES for a drug source, emphasizing the importance of obtaining the drugs quickly; (3) the informant offered drugs and money to JONES as the incentive; (4) JONES was vulnerable to the solicitation as she was a heroin addict at the time with no source of income.

Additional evidence was readily available to counsel in further support of this defense:

4. *Jones had no criminal history of drug distribution.*

Despite JONES' long history as a heroin addict, including a conviction and several arrests for possession of narcotics, she had never been arrested, much less convicted, of drug distribution. This indicates a lack of predisposition to engage in sales.

5. *The current offense involved one sale.* JONES was arrested at the scene of the one

sale in which she participated. This was not an instance where several separate transactions occurred, which would indicate a predisposition to commit the crime.

It should be noted that defense counsel initially did request disclosure of the identity of the confidential informant in the pretrial proceedings. At the motion to suppress hearing, however, the prosecution advised that they would not refer to the informant in *its* case. Defense counsel then abandoned the effort to obtain disclosure. Obviously this was a serious error. Whether or not the prosecution intended to use the informant, or refer to the informant, in *its* case was utterly irrelevant to the need by the defense to obtain disclosure of his identity for purposes of developing an entrapment defense. Indeed, the fact that the state indicated it did not intend to use the informant was a clue to the defense that the state had misgivings regarding the informant's testimony.

All of the above information was readily available to defense counsel prior to trial. Indeed, it existed in the routine discovery materials and in the testimony of his own client, which was readily available to this Court eleven years later.

Defense counsel apparently did not even consider an entrapment defense. When asked at the evidentiary hearing if he recalled any discussions regarding a confidential informant, he said no. When asked if he had contemplated an entrapment defense, he replied "I don't know" then indicated it would not have been helpful because JONES "came forward on her own, made the contact, left, came back and got in the vehicle and she was arrested." (Tr.Evid.Hrg. p. 37). As already noted, however, the viable entrapment defense concerned JONES' solicitation by the confidential informant who was working with the police, a theory defense counsel ignored.

This was not a situation where counsel made a strategic choice to forgo the entrapment defense, after investigation, which would have justified deference under *Strickland.* "(Counsel) simply failed to make the effort to investigate. (Counsel), therefore 'did not choose, strategically or otherwise, to pursue one line of defense over another. In-

stead, (he) simply abdicated his responsibility to advocate his client's cause.' " *Nealy,* 764 F.2d at 1178 (reversing a murder conviction due to counsel's failure to investigate a viable alibi defense); *Bryant, supra* (failure to investigate alibi defense not a strategic choice but an abdication of responsibility); *Profitt, supra* (no strategic justification for abandoning insanity defense); see also *Gray, supra; Sanders v. Ratelle,* 21 F.3d 1446 (9th Cir. 1994).

Instead of developing this viable line of defense, counsel presented the legally questionably and factually unsupported theory that JONES was high on drugs and didn't realize she was distributing heroin. "It appears to us not only that (defendant's) lawyers failed to present a defense that would have been both credible and well documented by (defendant's) medical history, but also that the defense that was offered was barely believable at best and, even worse, not documented by (defendant's) medical history." *Hill v. Lockhart,* 28 F.3d 832, 843 (8th Cir. 1994), *cert. denied,* 513 U.S. 1102, 115 S.Ct. 778, 130 L.Ed.2d 673 (1995).

*PREJUDICE*

This Court finds that under the *Cronic* standard, counsel was ineffective and that a specific finding of prejudice is not necessary. Additionally, this Court also finds that counsel's ineffectiveness did in fact prejudice the defense, as set forth in *Strickland.*

The test for prejudice under *Strickland* is whether there is a "reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id.,* 466 U.S. at 694, 104 S.Ct. at 2068. A defendant need not show that the attorney's mistakes altered the outcome of the trial. Rather the "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.,* 466 U.S. at 694, 104 S.Ct. at 2068.

Numerous courts have granted relief for ineffective assistance of counsel on the basis of counsel's failure to investigate and prepare viable theories of defense. *Nealy, supra* (ali-

bi); *Profitt, supra* (insanity); *DeLuca v. Lord,* 77 F.3d 578 (2nd Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 83, 136 L.Ed.2d 40 (1996) (extreme emotional disturbance); *Gray, supra* (self-defense); *Griffin v. Warden,* 970 F.2d 1355 (4th Cir.1992) (alibi); *Harris v. Reed,* 894 F.2d 871 (7th Cir. 1990) (eyewitness); *Montgomery v. Petersen,* 846 F.2d 407 (7th Cir.1988) (alibi); *Sanders, supra.*

In this case, with a proper defense, JONES could have presented evidence of entrapment by the confidential informant which could have provided exculpation despite the proof of all the elements of the offense. See *Brand,* 520 So.2d at 117, fn. 5. Her longtime heroin addiction, her lack of a criminal record with respect to heroin distribution, the pressures by the "untested" informant and her succumbing to his entreaties in exchange for drugs and money, the difficulty she had in locating a source until "Lionel" appeared, could have established to the jury that she was not a sophisticated dangerous dope dealer needing life imprisonment, but rather was a heroin addict susceptible to easy manipulation with simple suggestion, much less coercion.

Even if the entrapment defense did not persuade the jury to acquit, the evidence presented would have had a "reasonable probability" of bringing in a lesser verdict than the verdict mandating life imprisonment. With a proper presentation through closing argument, the jury would have been fully informed that it was proper to consider the severity of the penalty in deciding whether JONES should be convicted as charged. It is difficult to imagine that a jury would unanimously order a life sentence in a factual circumstance such as this, had it been properly presented.[13]

Finally, a spirited investigation by counsel and persistence in pursing the entrapment defense, may well have resulted in a plea bargain offer from the prosecution to a lesser charge. Had the case been effectively defended, it is difficult to imagine the prosecution pursuing a life sentence on this petition with any enthusiasm. Instead, the state re-

---

**13.** Again, the fact that a jury could not even be *seated* at the earlier trial setting because of their unwillingness to impose a life sentence for this offense, even without hearing any specific evidence, *is a strong indication of how potent this argument would have been.*

ceived no meaningful resistance to the charges from defense counsel. If the facts of this case and this level of this representation do not support a finding of ineffective assistance of counsel as envisioned by *Cronic* and *Strickland,* it is hard to imagine what facts would. In conclusion, the Court finds that failing to grant this petition for habeas corpus would result in a fundamental miscarriage of justice.

*CONCLUSION*

For all the above reasons, IT IS ORDERED that JONES' petition be GRANTED. It is FURTHERED ORDERED that the state either retry JONES within 120 days of this order or dismiss the charges. The state shall notify the defense and the Court of its intention within 30 days of this ruling.