**James Kurt GREEN, Petitioner,**

v.

**Gary L. JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.**

**No. Civ.A. 3:97–CV–2989–G.**

United States District Court,
N.D. Texas,
Dallas Division.

May 10, 1999.

Cynthia Russell Henley, Schaffer & Henley, Houston, TX, for Petitioner.

Ross Rayburn, Attorney General's Office, Austin, TX, for Respondent.

## MEMORANDUM ORDER

FISH, District Judge.

Petitioner James Kurt Green ("Green") seeks *habeas corpus* relief under 28 U.S.C. § 2254. For the reasons stated below, his petition for a writ of *habeas corpus* is denied.

### I.  BACKGROUND

Following a jury trial in a state court, Green was convicted of murder and sentenced to life imprisonment. His conviction was affirmed on appeal by the Texas Court of Appeals in an unpublished opinion. *Green v. State,* No. 05–88–00070–CR (Tex.App.—Dallas, October 3, 1989, *pet. ref'd* ).

Green has filed one application for *habeas* relief in state court. That application was denied, without written order and without a hearing, on the basis of the state trial court's findings. *Ex parte Green,* Application No. 35,237–01. Green has exhausted his state remedies, and his claims are properly before this court for merits review.

### II.  ISSUE

Green seeks *habeas* relief on a single ground, *viz.,* that he received ineffective assistance of counsel when his trial attorney failed to persuade him to accept a plea bargain of ten years offered by the prosecution.

### III.  ANALYSIS

#### A.  Standard of Review

The standard of review in this case is supplied by 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996). The

AEDPA, which became effective April 24, 1996, applies to all federal *habeas* applications filed after its effective date. *Jones v. Jones*, 163 F.3d 285, 298 (5th Cir.1998); *Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998).

Post–AEDPA, § 2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

■ Subsection d(2) furnishes the standard of review for questions of fact, while subsection (d)(1) is the measure for questions of law or mixed questions of law and fact (*i.e.*, questions that require the application of law to facts). *Drinkard v. Johnson*, 97 F.3d 751, 767 (5th Cir.1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997).[1] Whether Green received effective assistance of counsel is a mixed question of law and fact, *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Jones*, 163 F.3d at 299, to which subsection (d)(1)

therefore applies. *Jackson v. Johnson*, 150 F.3d 520, 522–24 (5th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1339, 143 L.Ed.2d 503 (1999); *Nobles*, 127 F.3d at 416.

As noted previously, Green's claim that he received ineffective assistance from his trial counsel was rejected on the merits by the state courts which reviewed his application for *habeas* relief. In adopting the findings and conclusions proposed by the State of Texas, the trial court found that Green "fail[ed] to overcome the strong presumption of reasonable professional assistance of trial counsel," *Ex parte Green*, Application No. 35,237–01 at 24, 29, and thus concluded that Green "received effective assistance of trial counsel" or, in the alternative, "failed to prove by a preponderance of the evidence that trial counsel's performance was deficient." *Id.* at 25, 29. The Texas Court of Criminal Appeals later denied Green's application without written order. *Id.* at cover.

■ For purposes of § 2254(d), these rulings were sufficient to constitute an adjudication on the merits of Green's ineffective assistance of counsel claim. See *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim.App.1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim"); *Jackson*, above, 150 F.3d at 523–24 (concluding, on facts similar to those here, that "the state court did rule against Jackson on the merits of his ineffective assistance of counsel claim and that ruling deserves the deference afforded state courts under the new AEDPA writ procedures.").

---

1. The first clause of § 2254(d)(1) permits a federal court to grant *habeas* relief for legal error (*i.e.*, an erroneous decision on a question of law) if it determines that the state court's decision rested on a legal determination that was "contrary to ... clearly established Federal law, as determined by the Supreme Court." The second clause, on the other hand, applies when a mixed question of law and fact is under consideration: a federal court may grant *habeas* relief only if it deter-

mines that the state court decision rested on "an unreasonable application of clearly established Federal law, as determined by the Supreme Court" to the facts of the case. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir.) (citing *Drinkard v. Johnson*, 97 F.3d 751, 768 (5th Cir.1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997)), *cert. denied*, —— U.S. ——, 117 S.Ct. 2518, 138 L.Ed.2d 1019 (1997). See also *Trevino v. Johnson*, 168 F.3d 173, 181 (5th Cir.1999).

■ Under subsection (d)(1), Green is not entitled to relief unless he demonstrates that "the state court's conclusions involved an 'unreasonable application' of clearly established federal law as determined by the Supreme Court." *Jones,* 163 F.3d at 299 (quoting *Nobles,* 127 F.3d at 418). "An application of federal law is unreasonable if it is so clearly incorrect that it would not be debatable among reasonable jurists." *Id.* In other words, "an application of law to facts is *unreasonable* only when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect." *Drinkard,* 97 F.3d at 769 (emphasis in original).

■ With this deferential standard of review in mind, the court turns to the showing made by Green that the denial of *habeas* relief to him by the state courts of Texas involved, in the language of § 2254(d)(1), an "unreasonable application" of clearly established federal law, as determined by the Supreme Court of the United States, to the facts of this case.

### B. *Green's Claim of Ineffective Assistance of Counsel*

#### 1. The Facts Before the State *Habeas* Court

##### a. Statement of, and Factual Basis for, Green's Claim

Green states his claim for *habeas* relief as follows:

> Jim Johnson, court appointed trial counsel, told petitioner that the State had offered a plea bargain of concurrent 10 year sentences in exchange for guilty pleas to the offenses of murder and unauthorized use of a motor vehicle. Johnson would not advise petitioner whether or not to accept the offer, stating that the decision was petitioner's. Johnson did not explain that the State had a strong case against petitioner;

that he had no viable factual or legal defenses (other than to argue that the prosecution witnesses were lying or mistaken); that he would probably be convicted; and, that he would probably receive a substantial sentence.

Thereafter, at a pretrial hearing, petitioner rejected the 10 year offer. The State then withdrew the offer.[2]

Green supported this claim in his state *habeas* application with his own affidavit, in which he averred:

> My name is James Kurt Green. I am the applicant in this cause.
>
> In the summer of 1987, I was charged with murder and unauthorized use of a motor vehicle. James Johnson was appointed to represent me at trial.
>
> In the fall of 1987, Mr. Johnson told me that the State had offered concurrent sentences of 10 years in exchange for guilty pleas to the offenses of murder and unauthorized use of a motor vehicle. I asked for his opinion as to whether I should accept the plea bargain. He responded that he could not advise me, one way or the other, as the decision was totally mine. He did not give his opinion of the strength of the State's case, whether I had a defense, the likelihood of conviction, or the probable sentence. Because I did not fully understand the nature of the evidence against me, and could not evaluate whether the 10 year offer was good or bad, I rejected it.
>
> Had Mr. Johnson advised me that the State had a strong case, that I had no factual or legal defenses (other than to argue that the prosecution witnesses were lying or mistaken), and that a jury would likely convict me and assess a substantial sentence, I would have accepted the 10 year offer rather than go to trial and risk receiving a life sentence.[3]

2. Petition for Writ of Habeas Corpus of a Person in State Custody at 5.

3. *Ex parte Green,* Application No. 35,237–01 at 15.

b.  Response of Green's Trial Counsel

Green's trial counsel responded to Green's allegations in the state court *habeas* proceedings with the following affidavit:

> My name is James K. Johnson. I am over the age of 21 years and I am qualified to make this statement. I am a practicing attorney licensed by the State Bar of Texas.... I was attorney of record for James Kurt Green who was convicted by a jury for the murder of Larry John Fahnesworth. I have read the Application for Writ of Habeas Corpus filed by Mr. Green and I have been requested by the attorney representing the State to make a statement concerning certain allegations of ineffective assistance of counsel during the plea bargaining process. I do not have my client's written authorization to divulge any confidential communication covered by Article 10, Section 9, Rule 1.05 of the Texas Disciplinary Rules of Professional Conduct (1990). I can state, however, that this case was fully investigated before trial. I made contact with State and Defense witnesses, reviewed reports, photographs, visited the scene of the alleged crime and made a full and candid report concerning each to my client for discussion and evaluation. As the record reflects, Mr. Green was informed as to the State's offer and, in open court, refused that offer. I have never made it a habit or practice of forcing a client to plead guilty when he or she is adamant about fighting the case. Even the guilty have an absolute right under our system of justice to plead not guilty, whether the State's offer is 1 day or 100 years. Nor can I or will I force a person to plead not guilty and fight a case simply because I believe we will prevail. I have never hidden from or refused to report damaging evidence to a client. As far as plea bargaining, what often appears to be an excellent deal to an attorney may not seem that attractive to a client. I regret that Mr. Green is unhappy with the trial results, however, without an order from the court I cannot be more specific concerning this matter.[4]

c.  Other Facts Disclosed
by the Trial Record

The trial record in *State of Texas v. James Kurt Green* reflects that Green spoke in open court on five separate occasions. In none of these did he express dissatisfaction with his trial counsel or reservations about going to trial on a plea of not guilty.

*The First Occasion*

THE COURT: Let's arraign the Defendant. Mr. Green, you will need to stand, please.

> (Whereupon, Mr. Rucker [one of the prosecutors] arraigned the Defendant in open court, by reading the indictment to the Defendant, outside the presence of the jury.)

MR. RUCKER: "... that one James Kurt Green, a/k/a Rodney Larry Spencer ..."—Is that your name?

THE DEFENDANT: Yes.

> (Whereupon, Mr. Rucker continued to arraign the Defendant, by reading the remainder of the indictment to the Defendant in open court, outside the presence and hearing of the jury.)

THE COURT: What is your plea, Mr. Green; guilty or not guilty?

THE DEFENDANT: Not guilty.

THE COURT: Thank you, sir. You may be seated. We will proceed on that plea.[5]

---

4.  Affidavit of Fact of James K. Johnson, *Ex parte Green*, Application No. 35,237–01 at 27. In Green's state *habeas* petition, Green's present *habeas* counsel acknowledged that Johnson apparently encouraged Green to accept the offer, though the record reflects only that Johnson communicated the offer to Green, not that Green's rejection of it was contrary to Johnson's advice. *Id.* at 9 n. 4.

5.  Pre–Trial Hearing, November 2, 1987, p. 10, lines 2–20.

### The Second Occasion

THE COURT: All right. Do you have anything you want to put on the record?

MR. JOHNSON: Yes. The State has offered you a plea of 10 years in the penitentiary on the murder case and 10 years in the penitentiary on the UUMV you're also charged with, the murder case being with the finding of the use of a deadly weapon. Did I convey that offer to you?

THE DEFENDANT: Yes.

MR. JOHNSON: And do you [w]ant to accept that offer or do you want to turn it down and enter a plea of not guilty as you did at arraignment on the murder case and go to trial in the murder case?

THE DEFENDANT: I want a plea of not guilty.

MR. JOHNSON: You will have to speak up so she can hear you.

THE DEFENDANT: Enter a plea of not guilty.[6]

### The Third Occasion

THE COURT: Mr. Johnson, did you have something you wished to put on the record before we recess?

\*   \*   \*   \*   \*   \*

MR. JOHNSON: Yes, sir, on the record. Your Honor, I'd like the record to reflect that the Prosecution heretofore has offered my client a plea bargain agreement which I have conveyed to him. In exchange for a plea of guilty, the State would recommend 10 years confinement to the Texas Department of Corrections.

### DIRECT EXAMINATION

BY MR. JOHNSON:

Q. Mr. Green, is that correct that I conveyed that offer to you?

A. Yes.

Q. And did you have an opportunity to think it over and—

A. 10 years aggravated—

Q. 10 years, Texas Department of Corrections for murder, and 10 years Texas Department of Corrections for the charge of unauthorized use of a motor vehicle; do you understand that was the offer?

A. I understood it was 10 years aggravated, which there's a difference.

Q. Okay. 10 years confinement in the Texas Department. Did I convey that offer to you as 10 years aggravated?

A. Yes.

Q. So you would have to serve a hard one-third of the sentence, right?

A. Yes.

Q. Did you decline that offer?

A. Yes.

Q. Did I threaten you, coerce you, do anything to change your mind or influence you?

A. No. No coercion.

Q. Okay. Now, we just went through jury selection. The jury having been seated, you and I discussed the strikes. Before we turned those strikes in, I explained to you you had 10 pre-emptory [sic] challenges, but Judge Stevens [sic] gave you an additional challenge and you considered all 11 of those challenges. Is that correct?

A. Yes, that's correct.

Q. Is there anyone on that panel that you instructed me specifically to strike that I refused to strike?

A. No one.

Q. Did you agree with the list of strikes that we turned in?

A. Yes.[7]

---

6. Pre–Trial Hearing, November 3, 1987, page 73, line 22 to page 74, line 13.

7. Statement of Facts, December 2, 1987, p. 174, line 21 to page 176, line 17.

### The Fourth Occasion

THE COURT: Let's bring our jury—

MR. JOHNSON: One other thing. I'd like something on the record, if I may. I would like to state on the record that I have explained to my client the danger in offering testimony like this before the jury, because of the fact that the individual cannot positively identify the person that was talking at the other end of the line.

Mr. Greene [sic], did I explain the danger of that to you?

THE DEFENDANT: Yes.

MR. JOHNSON: Okay. I'd like the record also to reflect that I explained to him that if the State has a witness who says they are the one or they are the individual who made the phone call, it may appear to the jury that we were trying to present fabricated evidence or testimony. Do you understand the danger in that?

THE DEFENDANT: Uh-huh.

MR. JOHNSON: Do you still want me to present that type of evidence to the jury?

THE DEFENDANT: I still want you to—

MR. JOHNSON: Present it?

THE DEFENDANT:—present it by—

MR. JOHNSON: Mr. Blankenbaker?

THE DEFENDANT:—Mr. Blankenbaker.

MR. JOHNSON: Mr. Blankenbaker's testimony. Okay.

THE COURT: Bring our jury in.[8]

### The Fifth Occasion

MR. JOHNSON: Mr. Greene [sic], I want you to tell the Judge, state into the record now, are you going to testify in this case or aren't you?

THE DEFENDANT: Yes.

MR. JOHNSON: You are going to testify?

THE DEFENDANT: I have to.

MR. JOHNSON: Have I explained to you all of the pitfalls if you do testify, have I explained to you what can happen to you?

THE DEFENDANT: You explained to me that my record would be brought out into the open—

MR. JOHNSON: That's right.

THE DEFENDANT:—and a few other things, also.

MR. JOHNSON: That's right. I also tell you now that a felony conviction that's alleged in the second paragraph, if you do not take the stand your felony conviction and record of that felony conviction may not be admissible for any purpose, because the State has alleged a wrong cause number and there's a fatal variance between the allegation and the proof, which means that the record may not be admissible. But if you do take the stand for impeachment purposes, under that theory of law it may.

THE DEFENDANT: Are you saying that—I don't understand that.

MR. JOHNSON: Judge, could we have just a moment?

THE COURT: Do you want to confer with your client?

MR. JOHNSON: That's right.

THE COURT: Out of the presence of the rest of us?

MR. JOHNSON: That's right.

THE COURT: All right. We don't have conference rooms, so the State, myself, and the reporter will vacate the room. The bailiff will have to remain. There is someone in the audience who I assume is not a witness nor an agent of the state, so he may remain.

(Whereupon, a recess was had.)

THE COURT: Mr. Johnson, at the time that I asked you if you had any further testimony, you began inquiring of

8.  Statement of Facts, December 8, 1987, page 210, line 9 to page 211, line 12.

the defendant whether he was going to testify.

MR. JOHNSON: Yes. I want to make this—

Mr. Greene [sic], you and I have had, not only on prior occasions, prior to trial we have discussed this issue on whether you were to testify, whether you were not to testify, and I told you all the advantages and the disadvantages of that, did I not?

THE DEFENDANT: And I know all of them now.

MR. JOHNSON: Okay. Well, I told you before when I first got on the case if you take the stand and testify that we would waive certain error and also it would make admissible certain parts of your prior criminal history. The jury would get to see that for impeachment purposes. Is that correct?

THE DEFENDANT: Uh-huh. Yes.

MR. JOHNSON: Okay. And I also told you that you would open up—you would be opened up to cross-examination by the State. They get to ask you questions on cross-examination to things, statement that you had previously made. Did I not explain that to you?

THE DEFENDANT: Yes, you did.

MR. JOHNSON: Having explained— did I also explain to you the right to remain silent?

THE DEFENDANT: Yes, you did.

MR. JOHNSON: Okay. Now, you have instructed me to call certain witnesses to the stand. Number one, you wanted Niki Kennedy back on the stand. Number two, you wanted Jody Blankenbaker. Is that correct?

THE DEFENDANT: Yes.

MR. JOHNSON: Okay. Other than that, you have not given me the name and address of any other witness that you wanted subpoenaed to the courtroom. Is that correct?

THE DEFENDANT: No.

MR. JOHNSON: Now, do you want to testify in this case or do you want to remain silent?

THE DEFENDANT: Having heard the facts about my prior record, no, I do not wish to testify in this case.

MR. JOHNSON: Okay. Is that your decision at this time?

THE DEFENDANT: Yes, it is.[9]

### d. Ruling of the State *Habeas* Court

Although the affidavits of Green and his trial counsel quoted above are both couched in general terms, there are some obvious differences. Green contends that Johnson's performance was deficient, among other things, in failing to evaluate the strength of the prosecution's case and in failing to discuss factual or legal defenses. Johnson, on the other hand, maintains that he "made contact with State and Defense witnesses, reviewed reports, photographs, visited the scene of the alleged crime and made a full and candid report concerning each to my client *for discussion and evaluation*" (emphasis added). The trial transcript reflects, moreover, that Johnson twice put on the record discussions he had had with Green regarding the state's plea offer. On neither of those occasions did Green indicate any doubt, hesitation, or equivocation about his decision to plead not guilty. To the contrary, he stated on November 3, 1987, "I want a plea of not guilty." To the extent that Green's and Johnson's accounts are factually in conflict, the state court clearly resolved that conflict in favor of Johnson's version.

Such a credibility choice is a finding of fact reviewed under 28 U.S.C. § 2254(d)(2). It is presumptively correct and can be overturned only if Green shows that it is incorrect by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This he has not done.

9. Statement of Facts, December 8, 1997, page 297, line 6 to page 300, line 19.

### 2. Mixed Question(s) of Law and Fact Before the State *Habeas* Court

Since the state *habeas* court did not make detailed findings of fact, it might plausibly be argued that Green's petition was not denied on a factual basis. Yet even were this true, this court is of the opinion that because of the deference that must be accorded the state court's resolution of mixed questions of law and fact,[10] Green has still not made out a claim for federal *habeas* relief.

As noted above, § 2254(d)(1) authorizes such relief only if Green demonstrates that the state court's decision on the merits "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." This means that to obtain relief, Green must demonstrate "that reasonable jurists considering the question would be of one view that the state court ruling was incorrect." *Drinkard*, 97 F.3d at 769.[11] Green has not made this showing.

The Supreme Court has indicated that the standards of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), apply to Green's claim. See *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ("the same two-part standard [of *Strickland* ] seems to us applicable to ineffective-assistance claims arising out of the plea process."); *Johnson v. Duckworth*, 793 F.2d 898, 899 (7th Cir.), cert. denied, 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986). Other than defining the standard, however, the Supreme Court has not addressed a claim like Green's. It is therefore necessary to examine decisions of the lower federal courts to determine if the decision of the Texas courts to deny *habeas* relief to Green "involved an unreasonable application of ... clearly established Federal law" to the facts of Green's case.[12]

Green's claim is a quintessential example of attempting to have his cake and eat it too. A principal reason for entering into a plea bargain is to avoid the uncertain outcome of a trial. See *Blackledge v. Allison*, 431 U.S. 63, 71, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (plea bargaining allows the defendant in a criminal case to avoid "the anxieties and uncertainties of a trial"); *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) ("Plea bargaining flows from 'the mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial."). Having already put the State to its burden of proof by pursuing an acquittal, Green now seeks the best of all worlds: the benefit of the proffered plea

---

**10.** The standard to be applied on federal *habeas* review, post-AEDPA, of a state court's resolution of mixed questions of law and fact has been described by our circuit as "most closely akin to the traditional 'clearly erroneous' standard than to any other established standard of review." *Mata v. Johnson*, 99 F.3d 1261, 1267 (5th Cir.1996). See also *Carter v. Johnson*, 110 F.3d 1098, 1108 (5th Cir.), cert. granted and judgment vacated, —— U.S. ——, 118 S.Ct. 409, 139 L.Ed.2d 313 (1997).

**11.** "In effect, a reasonable good faith application of Supreme Court precedent will immunize the state court conviction from federal *habeas* reversal, even if federal courts later reject that view of the applicable precedent." *Mata*, 99 F.3d at 1268.

**12.** It has been suggested that unless there is a Supreme Court case on point, federal law is not "clearly established." See *Blankenship v. Johnson*, 106 F.3d 1202, 1205 (5th Cir.) (because the Supreme Court has never decided whether a criminal defendant has a right to assistance of counsel on state-requested discretionary review, it might be said that such right was not "clearly established"), opinion withdrawn and superseded on rehearing, 118 F.3d 312 (1997). See also *Nevers v. Killinger*, 990 F.Supp. 844, 850 (E.D.Mich.1997) (citing *Lindh v. Murphy*, 96 F.3d 856, 870 (7th Cir. 1996), rev'd on other grounds, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)), aff'd, 169 F.3d 352 (6th Cir.1999), pet. for cert. filed (April 5, 1999) (No. 98–1665); *Pack v. Page*, 147 F.3d 586, 588 (7th Cir.) (reaffirming validity of those portions of Lindh unaffected by Supreme Court's reversal), cert. denied, —— U.S. ——, 119 S.Ct. 426, 142 L.Ed.2d 346 (1998); *Green v. French*, 143 F.3d 865, 869–73 (4th Cir.1998), cert. denied, —— U.S. ——, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999).

bargain (a limit to his sentence exposure) without the burden of such a bargain (the certainty of being convicted). See *United States v. Day*, 969 F.2d 39, 46 n. 9 (3d Cir.1992). Human nature being what it is, if *habeas* relief were freely granted in such circumstances, no rational defendant would ever accept a plea bargain before trial.[13] Instead, he would try to obtain an acquittal at trial and, if unsuccessful, retroactively seek—through *habeas* relief—the benefit of any plea bargain previously offered by the prosecution. Because of the "heads I win, tails you lose" quality of such a *habeas* claim, courts have been chary of granting relief in these circumstances. See *Day*, 969 F.2d at 46 n. 9.

Green relies on one case where limited *habeas* relief was granted in such circumstances, *Boria v. Keane*, 99 F.3d 492 (2d Cir.1996), *cert. denied*, 521 U.S. 1118, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997), but that case was decided under pre-AEDPA standards of review, which were less deferential to state court decisions. Furthermore, even under those less deferential standards, other cases not cited by Green have denied relief on facts more comparable to the instant case than *Boria's*. For example, in *Johnson v. Duckworth*, above, 793 F.2d at 898–99, the defendant was convicted by a jury in a state court of murder, as Green was here, and sentenced to thirty years. Upon his subsequent ap-

plication for *habeas* relief, Johnson alleged that before trial he had been offered a plea agreement of fifteen years but that his trial counsel did not allow him to make a final decision on this offer. The district court denied *habeas* relief, and the Court of Appeals affirmed. *Id.* In explaining this result, the Court of Appeals used language directly applicable to Green's case:

> [The defendant] was informed of the agreement and was given an opportunity to discuss its ramifications with his attorney. In addition, [the defendant] necessarily must have been aware of its rejection, at the very latest, when his case proceeded to trial. Nonetheless, at no time prior to being convicted did [the defendant] state that he wanted to accept the agreement nor did he ever object to the decision that was made.

*Id.* at 902.[14]

Another case where *habeas* relief was denied on facts similar to Green's is *Diaz v. United States*, 930 F.2d 832 (11th Cir. 1991). There, a defendant convicted of RICO and drug conspiracies, as well as several substantive counts of drug trafficking, sought *habeas* relief under 28 U.S.C. § 2255 on the basis that trial counsel was ineffective in rejecting, without consulting him, a plea offer of five years. According to the allegations of his petition, which were assumed to be true since no evidentiary hearing was held, the prosecution had offered Diaz, prior to trial, a plea

13. Our circuit has recognized as much, albeit in a slightly different context:

> If a defendant can successfully demand the same leniency after standing trial that was offered to him prior to trial in exchange for a guilty plea, all the incentives to plea bargain disappear; the defendant has nothing to lose by going to trial.

14. In *Johnson*, the defendant did indicate for the first time in his post-conviction *habeas* proceedings, as Green does here, a desire to plead guilty. The Court of Appeals expressed serious doubt, however, "whether Johnson's after-the-fact testimony regarding his wishes in and of itself would be sufficient to establish that prior to trial, but for [his defense counsel's] actions, there was a reasonable probability he would have accepted the plea agreement." 793 F.2d at 902 n. 3. Because of this

concern, the Seventh Circuit has insisted on some objective evidence that the defendant would have accepted the alleged proposed plea agreement absent defense counsel's advice. See *Paters v. United States*, 159 F.3d 1043, 1046 (7th Cir.1998) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir.1991), *cert. denied*, 505 U.S. 1223, 112 S.Ct. 3038, 120 L.Ed.2d 907 (1992)). See also *United States v. Gordon*, 156 F.3d 376, 380–81 (2d Cir. 1998); *United States v. Day*, 969 F.2d 39, 45 (3d Cir.1992); *United States v. Barber*, 808 F.Supp. 361, 378 n. 47 (D.N.J.1992), *aff'd*, 998 F.2d 1005 (3d Cir.1993) (table). Here, there is no evidence other than Green's self-serving affidavit in support of his *habeas* petition that he would have accepted the plea bargain.

bargain of 5–years in exchange for a guilty plea and the testimony against his co-defendants. Diaz further alleged that he declined the offer, but at trial, the prosecution made a new offer of 5–years, this time in exchange only for his guilty plea. Diaz claimed that his counsel was ineffective because counsel made the decision to reject the plea offer without consulting him. He also contended that his counsel was ineffective in advising him that the new plea offer was "bullshit." *Id.* at 834. On these facts, the district court denied a writ of *habeas corpus,* and the Court of Appeals affirmed. Citing *Johnson,* 793 F.2d at 902 n. 3, the Court of Appeals noted that in light of

> appellant's awareness of the plea offer, his after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer.

*Id.* at 835. It therefore concluded that Diaz had "not established facts that, if proven, would entitle him to relief." *Id.* That reasoning is equally applicable here.

These cases, among others, are sufficient to illustrate why Green has not shown that he is entitled to relief. He must show not only that the state court's denial of the writ to him was incorrect, but also that the denial was so incorrect that reasonable jurists would be of one mind in labeling it so. Cases such as *Johnson v. Duckworth* and *Diaz v. United States* signify at once the enormity of that hurdle and Green's failure to surmount it.

### IV. *CONCLUSION*

Green has failed to show that he merits *habeas* relief. Accordingly, his petition for a writ of *habeas corpus* is **DENIED.**

**SO ORDERED.**

*Frank v. Blackburn,* 646 F.2d 873, 883 (5th Cir.1980) (en banc), *cert. denied,* 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 123 (1981).